OPINION OF THE COURT
Ellen M. Coin, J.
Defendant Professional Truck Leasing Systems, Inc. is charged in a universal summons with violating Rule 4-12 (j) (1) of the New York City Traffic Rules (34 RCNY 4-12 [j] [1] [Traffic Rules or Rules]). The summons alleges that on the date of its issuance defendant was operating a vehicle for the purpose of advertising business other than its own. Defendant now moves the court for an order dismissing the prosecuting instrument pursuant to CPL 170.30 (1) (a) and 170.35 (1) (c) on the ground that the ordinance defining the offense charged is unconstitutional. Specifically, defendant argues that the Rule violates the First Amendment to the United States Constitution and that it is impermissibly vague in violation of the Due Process Clause of the Constitution.
The Defendant
Defendant Professional Truck Leasing Systems, Inc. is a truck leasing company. Among the companies to which it leases its trucks is Streetblimps, Inc. (Streetblimps). Defendant alleges that when the instant summons was issued, Streetblimps was leasing and operating the subject truck.*
Streetblimps is in the business of mobile advertising, selling advertising space on the sides of its trucks to customers including political campaign organizations, news organizations, public service companies, commercial businesses and media and Internet companies. Thus, defendant contends that Street-blimps provides noncommercial as well as commercial advertising on the sides of its vehicles for view by the public on the public streets.
*736 Defendant contends that Streetblimps annually operates a total of 15 to 20 trucks in the whole of the eastern United States, and that there have been times when none of its trucks were in Manhattan for three to four months. In 1999 Street-blimps operated its vehicles in Manhattan less than every other day. When it does operate trucks here, one to five vehicles are generally involved.
The Ordinance
Traffic Rule 4-12 (j) provides, in pertinent part, as follows:
“(j) Commercial advertising vehicles.
“(1) Restrictions. No person shall operate, stand, or park á vehicle on any street or roadway for the purpose of commercial advertising. Advertising notices relating to the business for which a vehicle is used may be put upon a motor vehicle when such vehicle is in use for normal delivery or business purposes, and not merely or mainly for the purpose of commercial advertising, provided that no portion of any such notice shall be reflectorized, illuminated, or animated, and provided that no such notice shall be put upon the top of the vehicle and that no special body or other object shall be put 'upon vehicles for commercial advertising purposes. Advertisements may be put upon vehicles licensed by the New York City Taxi and Limousine Commission in accordance with the Commission’s rules.
“(2) Buses and Sanitation Vehicles. Notwithstanding the foregoing provisions of this subdivision (j), buses operated pursuant to a franchise or consent from the Department of Transportation of the City of New York, and cleaning and collection vehicles owned or operated by the New York City Department of Sanitation may display commercial advertisements, including reflectorized and illuminated advertisements, on the exterior surface areas of such vehicles and may have installed on such vehicles the necessary frames, supports and related appurtenances in order to display such advertisements.” (34 RCNY 4-12 [j].)
First Amendment Claims
Freedom of speech, which is protected by the First Amendment from infringement by Congress, is among the fundamental personal rights and liberties which are protected by the Fourteenth Amendment from invasion by State action. (Lovell v Griffin, 303 US 444, 450 [1938].) Defendant attacks the Rule as an unconstitutional violation of the First Amendment for facial invalidity, or, alternatively, as an unconstitutional regulation of commercial speech.
*737 Facial Invalidity
Defendant initially argues that the Rule is unconstitutional as a complete ban on both noncommercial and commercial speech. However, on its face the Rule applies only to vehicles operated, stood or parked “for the purpose of commercial advertising.” (Traffic Rule 4-12 [j] [1].) Although the Traffic Rules contain no definition of the term “commercial advertising,” “[cjommercial advertising has long been well defined by Supreme Court commercial speech doctrine. It ‘constitutes paradigmatic commercial speech * * * because its fundamental purpose is to propose an economic transaction.’ ” (Lavey v City of Two Rivs., 171 F3d 1110, 1116 [7th Cir 1999] [citation omitted].) Since the Rule cannot be applied to noncommercial speech, this aspect of defendant’s argument falls of its own weight.
Defendant next contends that the Rule impermissibly differentiates based upon the content of the message advertised. The Supreme Court has held that a State may regulate the time, place or manner of commercial speech, as opposed to its content, to effectuate a significant governmental interest. (Virginia State Bd. of Pharmacy v Virginia Citizens Consumer Council, 425 US 748, 771 [1976].) Defendant notes that the Rule exempts advertising notices appearing on vehicles owned by the advertised business. Thus, defendant argues, the Rule differentiates based upon the content of the message, since it is only by reference to the content that one can determine whether a particular message is prohibited on the side of any commercial vehicle.
Defendant misapprehends the import of the Supreme Court’s holding in Virginia Pharmacy Bd. (supra). What the Court found to be prohibited was the regulation of the content of commercial speech by a municipality.
“The principal inquiry in determining content neutrality, in speech cases generally * * * is whether the government has adopted a regulation of speech because of disagreement with the message it conveys * * * The government’s purpose is the controlling consideration. A regulation that serves purposes unrelated to the content of expression is deemed neutral, even if it has an incidental effect on some speakers or messages but not others.” (Ward v Rock Against Racism, 491 US 781, 791 [1989] [citations omitted].).
Here the City adopted the Rule in order to promote traffic safety and alleviate traffic congestion (People v Target Adv., 184 Misc 2d 903 [Crim Ct, NY County 2000]), not to suppress *738 any particular advertised message. (Cf., Carew-Reid v Metropolitan Transp. Auth., 903 F2d 914 [2d Cir 1990].) Therefore, even though the regulation is based on a particular medium of expression and distinguishes between messages carried on that medium, it remains neutral as to the expression’s content. (Id., at 917.)
In a case analogous to the instant, Suffolk Outdoor Adv. Co. v Hulse (43 NY2d 483 [1977]), the Court of Appeals was asked to determine the constitutionality of a Town of Southampton ordinance prohibiting the erection of all nonaccessory billboards. On-premises billboards (i.e., those advertising the business at which the billboard was located) were permitted under the ordinance. Citing the Supreme Court’s pronouncement in Virginia Pharmacy Bd. (supra), the Court of Appeals held that the Southampton ordinance made no attempt to regulate the content of the commercial speech appearing on billboards, but regulated only the place and manner in which billboards might be maintained. Thus, the Court concluded that the ordinance did not infringe the First Amendment right of free speech.
Similarly, here the Rule makes no effort to regulate the content of the prohibited speech. (Compare, People v Mobil Oil Corp., 48 NY2d 192 [1979] [ordinance prohibiting sign referring to price of gasoline other than at pump held content-based in violation of First Amendment]; Zoepy Marie, Inc. v Town of Greenburgh, 103 AD2d 776 [2d Dept 1984] [same]; Town of Smithtown v Commack Gas & Washateria, 108 Misc 2d 887 [Suffolk Dist Ct 1981] [ordinance prohibiting use of portable signs only in filling stations held impermissible restriction on protected commercial speech aimed specifically at retail gasoline price information].)
Defendant next contends that if the Rule is deemed to be content-based, it fails to meet the other criteria imposed by the Supreme Court on restrictions on speech, including the requirement that they be narrowly tailored to serve a significant governmental interest. (Consolidated Edison Co. v Public Serv. Commn., 447 US 530, 535 [1980].) As noted supra, this court has found that the Rule serves significant governmental interests, i.e., traffic safety and reduction of congestion, and is narrowly tailored to remove a class of vehicles from the street. (People v Target Adv., 184 Misc 2d, supra, at 911-912, 915.)
Finally, defendant argues that the Rule is unconstitutionally overbroad. It is well settled that overbreadth analysis is not applicable to commercial speech. (Blue Bird Coach Lines v City of Niagara Falls, 53 NY2d 731 [1981]; People v Mobil Oil Corp., 48 NY2d, supra, at 199.)
*739 Commercial Speech
Defendant next argues that the Rule is unconstitutional as a ban of commercial speech. Relying on a line of Supreme Court cases beginning with the Virginia Pharmacy Bd. case (supra), which extends a degree of First Amendment protection to commercial speech under certain circumstances, defendant contends that the People have failed to meet their burden to establish the validity of the Rule under applicable Supreme Court principles.
In opposition, the People have submitted no answering papers or memorandum at law, but instead rely exclusively on the Supreme Court’s determination in Railway Express Agency v New York (336 US 106 [1949]). Interpreting a predecessor version of Rule 4-12 (j), the Supreme Court held there that the regulation, as applied to sellers of advertising, did not violate the Due Process and Equal Protection Clauses of the Fourteenth Amendment.
Railway Express (supra), however, did not address the First Amendment concerns raised by defendant here. Indeed, subsequent to the Supreme Court’s decision in that case, a substantial body of case law developed both in the Federal courts and, to a more limited degree, in this State, restricting municipalities’ efforts to regulate commercial speech.
In Central Hudson Gas & Elec. Corp. v Public Serv. Commn. (447 US 557 [1980]), the Supreme Court adopted a four-part test for determining the validity of government restrictions on commercial speech, as distinguished from more fully protected speech. (1) The First Amendment protects commercial speech only if that speech concerns lawful activity and is not misleading. A restriction on otherwise protected commercial speech is valid only if it (2) seeks to implement a substantial governmental interest, (3) directly advances that interest, and (4) reaches no further than necessary to accomplish the given objective. (447 US, at 563-566.)
In People v Target Adv. (184 Misc 2d 903 [Crim Ct, NY County 2000, Gorenstein, J.], supra), another Judge of this court had occasion to consider the very argument raised by defendant here. He found that the first prong of the Central Hudson test was met, in that the Rule does not purport to ban only advertising that concerns unlawful activity or is misleading. Reviewing the legislative history of the Rule and its predecessors dating back to 1882, the Target court found that the City’s purpose in enacting the Rule was to promote traffic safety and alleviate traffic congestion. Thus, the court found that the Rule *740 met the second prong of the test of seeking to implement a substantial governmental interest.
The Target court held that the Rule met the third Central Hudson factor, finding that it directly advances the City’s interest in controlling traffic, since the ban on the use of advertising-only vehicles lessens the amount of potential traffic on the City streets. Defendant here argues that the Rule exempts so many vehicles from its ambit that it fails to advance the City’s interest. However, the Target court refuted this argument in its opinion, citing Supersign of Boca Raton v City of Fort Lauder-dale (766 F2d 1528 [11th Cir 1985]). That case involved a rule banning vehicles or watercraft “used for the primary purpose of displaying advertisements” on any public roadway or waterway, but exempting vehicles displaying advertisement of the vehicle’s owner, buses and taxicabs. (Id., at 1529.) In Super-sign, the court noted that while the City of Fort Lauderdale could have more completely advanced its purpose by banning all vehicular advertising, a municipality may “pursufe] a partial solution to its problems.” (766 F2d, at 1531 [citation omitted].)
Finally, the Target court found that the Rule met the fourth prong of the Central Hudson test, i.e., that it reach no further than necessary to accomplish the given objective. The court held, “The ban here is narrowly tailored to remove a class of vehicles from the street. The removal of these vehicles from the streets fulfills the City’s purpose of reducing the overall number of vehicles congesting the City’s streets. This court will not second-guess the City’s decision to remove this narrow group even where it might have removed others.” (People v Target Adv., 184 Misc 2d, supra, at 915.) This court is persuaded by the reasoning of Target Adv. and, accordingly, holds that the Rule is not unconstitutional as a ban of commercial speech.
Vagueness
A statute is unconstitutionally vague if it fails to provide a person of ordinary intelligence with a reasonable opportunity to know what is prohibited, and it is written in a manner that permits or encourages arbitrary or discriminatory enforcement. (People v Foley, 94 NY2d 668 [2000] [citations omitted].) However, “[t]he Fifth and Fourteenth Amendments’ Due Process Clauses proscribe the imposition of penal sanctions against conduct that is defined in language so vague that ‘men of common intelligence must necessarily guess at its meaning’ * * * ‘If * * * the law interferes with the right of free speech or of *741 association, a more stringent vagueness test should apply.’ ” (Matter of Sulzer v Environmental Control Bd., 165 AD2d 270, 277 [1st Dept 1991] [citations omitted].)
Defendant argues that the Rule’s prohibition against the use of vehicles for the purpose of “commercial advertising” is vague, in that it fails to provide fair warning to defendant as to the precise nature of the speech it prohibits. Although the Traffic Rules do not define the term “commercial advertising,” that term, as noted supra, has long been well defined by Supreme Court commercial speech doctrine. The distinction between “commercial advertising” prohibited by the Rule and other, noncommercial forms of advertising is clear. Thus, contrary to defendant’s tortured argument, under the Rule the focus is not upon whether Streetblimps charges a fee for advertising on its vehicles. Instead, the prohibition is upon a vehicle’s carrying advertising which proposes an economic transaction that is unrelated to the business for which that vehicle is used. Thus, without fear of prosecution, Streetblimps can operate vehicles with political advertising or advertising for nonprofit entities such as the Red Cross or UNICEF, to cite defendant’s own examples. (See, Metropolitan Funeral Directors Assn. v City of New York, 182 Misc 2d 977, 989 [Sup Ct, NY County 1999] [“Plaintiffs certainly can easily enough interpret the term advertising material themselves in order to determine what material they use for advertising purposes”].) Accordingly, the Rule is not unconstitutionally vague.
For all of the foregoing reasons, the motion to dismiss is denied.

 Seeking an adjudication of the constitutional issue raised on this motion, defendant does not move for dismissal of the summons on the ground that it was not operating the vehicle on the date in question. Such an allegation would raise a triable issue of fact, at any rate, not a ground for a motion to dismiss. (CPL 170.35 [1].)